IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,         )
                                )
v.                              )        No.  05-10250-01-WEB
                                )
JAMES R. LEEPER,                )
                                )
              Defendant.         )
_____  )

**<u>Memorandum and Order</u>**

This matter came before the court on November 28, 2006, for a hearing on the defendant's motion to suppress evidence.  The court took the motion under advisement at the conclusion of the hearing.  Having reviewed the evidence and the issues presented, the court is now prepared to rule. For the reasons set forth herein, the court finds the motion to suppress should be denied.

  I. *Facts*.

On November 5, 2005, the Harper County Sheriff's Office received a report of a shooting incident that occurred earlier that same day.  The report stated that three boys had been hunting on property in rural Harper County near the farmstead of defendant James Leeper when they were shot at by someone from the Leeper property.  Two days later, Detective Sergeant (now Lt.) Les Ward of the Harper County Sheriff's Office was assigned the investigation.  Ward reviewed statements from two of the boys and later talked to the three of them.  He also spoke to an uncle of one of the boys and conducted additional investigation.  Ward later put the information he gathered into an affidavit for a search warrant.  Among other things, Ward's affidavit stated that he had information the three boys were bird hunting on property about a half-mile east of the Leeper farmstead when they heard 15-20 gunshots in a row followed by "zinging sounds" next to them.  They ducked to the

ground and moved to a wooded area for cover when they were shot at several more times.  They took cover on lower ground as bullets were cutting the air within a few feet of them.  They could tell the shots were coming from the Leeper property, which was about 3/4 to 5/8 of a mile from their initial position, but they could not see who was shooting at them.  Ward's affidavit stated that because the shots were fired in rapid succession from a significant distance, he believed they "were likely fired from an Assault/Military type rifle such as an AR-15, SKS, or an AK-47."  According to Ward's affidavit, later on the day of the incident the uncle of one of the boys had a conversation with James Leeper, who admitted having fired a gun at the boys "because they had not told him or asked him if [they] could hunt down there."  When the uncle told Leeper the boys were on the adjacent property and had permission to be there, Leeper allegedly said that he did not care because "they hadn't told him they were going down there."  Leeper also allegedly stated that he believed the boys were shooting back at him with a 9 mm firearm, notwithstanding the uncle's claim that the boys only had shotguns.

Ward's affidavit stated there was probable cause to believe that the items sought "which are Rifle(s) and /or Handgun(s) which were used" in the commission of the offenses of aggravated assault and obstruction of legal hunting, in violation of Kansas statutes, would be located at the farmstead [which was described particularly in the affidavit and warrant].  It also said it was reasonable to assume "that the Rifle(s) and / or Handgun(s) used by James R. LEEPER in the commission of the above crimes would most likely be at or can be located somewhere on the Real Estate described above."  The affidavit stated it was "widely known that James R. LEEPER had served in the US Military during the [Vietnam] conflict / war and that he had training with the use of firearms Rifle(s) and / or Handgun(s) which would allow him to be very accurate and proficient

with them over greater distances then most people would be."

In the first portion of the affidavit, Ward identified the property constituting evidence of the crime as:

> Rifle(s) and/ or Handgun(s), to include, but are not limited to, Semi-Automatic Military / Assault type rifles or handguns, and / or any Fully-Automatic Military / Assault type rifles or handguns, and / or any Selective Fire type of Military /Assault type rifles or handguns, and /or any other Firearms, Dangerous Weapons and / or Explosives.

The affidavit was sworn to by Ward before a Judge of the Harper County District Court on the afternoon of December 6, 2005.  The Judge signed a search warrant shortly thereafter authorizing a search for the items listed above, including "Dangerous Weapons and / or Explosives."

At the suppression hearing, Lt. Ward was asked about his request to search for explosives, given that his affidavit contained no discussion pertaining to such items.  Ward testified he had received some reports that the defendant had automatic weapons and explosives at his residence. He said he thought he had a reasonable suspicion that such items would be there, although he did not believe he had probable cause as to such items and so did not discuss these items in the affidavit. Ward denied that he was attempting to mislead the state Judge by including these items in the list of evidence sought.  He said he only included them because he knew there was a possibility such things might be there.  Ward testified he did not tell the Judge about the reports or his suspicions pertaining to explosives, and the Judge did not ask him about it.  He said he told the Judge they would be using a swat team to execute the warrant, and that the Judge told him to be careful.

Ward and others assembled a substantial team to execute the warrant, including agents from the Kansas Highway Patrol Special Response Team, the Kansas Fire Marshal's office, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the Harper County Sheriff's office.  The warrant

was executed beginning at approximately 7:00 a.m. on December 7, 2005.[1]  The search ended at about 4:15 p.m.  In the course of the search, officers found about 27 firearms (one of which did not have any visible serial number), a silencer, 28 magazines for firearms, a conversion kit for a pistol, five items thought to be destructive devices, numerous containers of suspected explosive compounds, and a paper containing what was thought to be instructions pertaining to an explosive device.  The evidence at the hearing was that officers searched throughout the defendant's residence and farmstead in areas that might contain handguns or rifles.

One of the witnesses at the hearing, Wally Roberts, is an agent with the Kansas Fire Marshal's Office.  Roberts is a trained handler of an explosives-detecting canine.  He participated in the search of the Leeper residence.  Roberts had his dog with him at the site, but testified he did not deploy the dog in the house.  He did a quick "safety sweep" to see if there were any potential hazards to the dog in the house and saw in plan view numerous explosive items such that the dog would have alerted everywhere in the house.  Among other things, Roberts saw containers of the explosive material "tannerite" in the mud room of the house between the garage area and the kitchen.  Also during the course of the search, Roberts opened a drawer in this room and saw what he immediately believed to be an explosive device in a clear plastic baggie.  The device appeared to have a fuse sticking out of it.  Roberts testified that the drawer he opened was big enough to contain a handgun or a broken down rifle.

Ron Harris, another agent of the Kansas Fire Marshal Office, had checked prior to the search

---

[1] On December 2, 2005, based upon the filing of a complaint by the Harper County Attorney, the same Judge issued a warrant for the arrest of Mr. Leeper.  The warrant stated there was probable cause to believe the defendant had committed an assault with a deadly weapon, "to wit: [a] rifle of unknown caliber."  The arrest warrant was executed in conjunction with the execution of the search warrant on December 7, 2005.

and was aware that the defendant did not have a license to possess tannerite in a compound or binary form.  In the mud room referred to above, Harris saw an open box with containers of what he recognized as tannerite.  He also saw a coke bottle containing what appeared to be metal "bb's" packed in tannerite, which he testified was an illegal explosive device under Kansas law.  Another witness, ATF Special Agent Neal Tierney, testified that he searched in a bathroom vanity drawer and found what he recognized as a silencer.

Other evidence at the suppression hearing included testimony of Mike Freeman, an investigator for the Harper County Sheriff's Office.  Freeman testified that when officers found the destructive devices in the residence, they needed a flat space to set them in order to render them safe, so he cleared off some items from a kitchen table.  One of the items caught his eye, because it was a paper that had drawings on it of arrows and a circle with the word "blast" written on it.  He did not know the significance of it, so he showed it to one of the special agents, who recognized it as a drawing demonstrating a "directional blast."  Freeman also testified that he examined the Leeper's computer and looked to see whether it showed that the computer had been used to look at a tannerite website.  Freeman testified he had not been to the training academy at the time of this search and did not realize he did not have the authority to search the computer.

II. *Motion to Suppress*.

The defendant's motion asserts a number of reasons why the evidence obtained in the search should be suppressed.  First, he contends Lt. Ward intentionally omitted material information from his affidavit -- namely, information pertaining to his belief that Mr. Leeper possessed explosive devices.  Defendant contends the officer knew he had no probable cause for such items, but he included them among the items to be searched for without saying anything to the state Judge about

it.  Defendant argues the agent did so deliberately to deceive the judge into issuing an overly-broad warrant.  Defendant argues the warrant was in fact over-broad because it authorized a search for handguns and explosives when there was no probable cause for such items.  He argues the affidavit only showed probable cause to search for high-powered rifles.  He contends that the over-broad nature of the warrant permitted the officers to engage in a general search of all areas of the house.

Defendant also argues that any probable cause to search was stale by the time the warrant was executed because it had been over thirty days since the shooting incident.  He argues it was unlikely that any firearm used in the offense would still be at the house as of the date of the search. Next, defendant argues the search exceeded the scope of the warrant because officers seized evidence not described in the warrant, such as the piece of paper the Government claims contains instructions for a destructive device.  Lastly, defendant argues the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984) does not apply because there is evidence that the officers mislead the Judge into issuing an overly broad warrant and purposely exceeded the scope of the warrant.

III.  *Discussion*.

A.  *Material Omission*.  It is a violation of the Fourth Amendment to "knowingly and intentionally, or with reckless disregard for the truth," include false statements or to make material omissions in an affidavit filed in support of a search warrant.  *Franks v. Delaware*, 438 U.S. 154 (1978).  *See also United States v. McKissick*, 204 F.3d 1282, 1297 (10th Cir. 2007) (*Franks* standard applies to material omissions as well as affirmative falsehoods).  To establish a *Franks* violation for material omission, a defendant must first establish by a preponderance of the evidence that officers omitted material information intentionally or with reckless disregard for the truth.  *United States v.*

6

*Tisdale*, 248 F.3d 964, 973 (10th Cir.2001). If the defendant meets this burden, the court will examine the affidavit as if the omitted information had been included to determine whether the affidavit would still give rise to probable cause. *Id.* Probable cause exists when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir.2001).

Under the evidence presented, the court finds the agent did not attempt to mislead the Judge by including explosives among the items to be searched for. Moreover, the court finds the Judge was aware of this particular language in the warrant request. At any rate, whatever the reason for the inclusion of "explosives" among the items to be sought, the defendant has failed to show that any omission by the agent was material to the issuance of the warrant. In order for the fruits of a search to be suppressed, the omission must be "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155. Even had the agent's admittedly flimsy information about explosives been included in this affidavit, the Judge undoubtedly would have still determined there was probable cause to search the farmstead for firearms that were used in the shooting on November 5, 2005. And for the reasons set forth herein, the court concludes that the evidence challenged by the defendant was discovered lawfully within the scope of a search for firearms. Accordingly, the failure to include the agent's information about explosives in the affidavit does not constitute a material omission.

B. *Overly Broad Warrant*. As an initial matter, the court rejects the defendant's contention that the warrant was over-broad because it authorized a search for handguns as well as rifles. Although it is true that the officer obtaining the warrant set forth his opinion that the weapon used in the shooting was more likely a rifle, nothing in the affidavit precludes the possibility that the

firearm was some sort of handgun.  All that was known for certain (under the facts alleged in the affidavit) was that a firearm was used to shoot at the boys from some distance -- although the distance itself was unknown because the shooter was never seen.  *See United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006) ("Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit.").  The use of either a handgun or a rifle would have constituted an offense under the circumstances, and the affidavit was sufficient to show probable cause to search for either type of firearm that might have been used to commit the offense.

As for the warrant's authorization to search for explosives, the Government concedes there was no probable cause to search for such items, but it argues this portion of the warrant is severable under the analysis of *United States v. Sells*, 463 F.3d 1148 (10th Cir. 2006).  The court agrees.  Under the severability doctrine, "[t]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized -- on plain view grounds, for example -- during ... execution [of the valid portions.] )" *Id*. at 1150 (*quoting United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993)).

To determine whether severability is applicable, the court first divides the warrant into individual clauses, portions or categories, and then examines the constitutionality of each part.  *Sells*, 463 F.3d at 1151. If a part of the warrant is sufficiently particularized and supported by probable cause, the court determines whether that portion is distinguishable from the invalid portions, and whether the valid portion(s) make up the greater part of the warrant.  *Id*.  Under this test, it is clear that the portions of the instant warrant authorizing a search for handguns and rifles are

constitutionally valid and are supported by probable cause.   Moreover, those portions are distinguishable from the authority to search for explosives, and they constitute the greater part of the warrant.   Unlike the clauses pertaining to handguns and rifles, the clause in the warrant authorizing a search for "other Dangerous Weapons and / or Explosives" has no demonstrable relationship to the facts setting forth probable cause for the shooting incident.   This is a description of "distinct subject matter" not related to the other portions.   *Cf. Sells*, 463 F.3d at 1158.   Moreover, the greater portion of the warrant clearly pertains to the seizure of rifles or handguns that may have been used in the shooting, and those portions of the warrant are plainly valid and particularized. Under the circumstances, the over-breadth of the warrant does not require suppression of any of the firearms seized pursuant to the warrant.

As for the explosive materials, devices, and the silencer seized during the search, the court also agrees with the Government's contention that such items were properly seized under the "plain view" doctrine.   The plain view doctrine allows a law enforcement officer to seize evidence of a crime, without violating the Fourth Amendment, if  (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object.   *United States v. Angelos*, 433 F.3d 738, 747 (10th Cir.2006) (*quoting United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004)).   The evidence presented at the hearing showed that these elements were satisfied with respect to the seizure of the explosive devices and materials found at the farmstead.   It is also true of the "directional blast" drawing, which was found while clearing items off the kitchen table.   Pursuant to the search warrant, the officers were lawfully in the defendant's house and could search any

9

portion thereof that might reasonably contain handguns or rifles used in the November 5 shooting.

A number of items, such as the containers of tannerite and the coke bottle with tannerite and BB's,

were found in the open in the house.  The defendant argues that plain view would not apply insofar

as the agents saw these items by opening drawers in cabinets or bathroom vanities,  but to the extent

the agents seized items found inside drawers (including the suspected destructive devices and a

silencer), the evidence showed that the drawers could have contained handguns or broken-down (or

collapsible) rifles.  The agents thus had a lawful right to search in those areas for firearms, and they

could lawfully seize the destructive devices or other items in view of their immediately apparent

incriminating character.  There is no credible evidence that the officers exceeded the scope of a

legitimate search for firearms in the course of discovering these items.  This is true, moreover, even

if the officers fully expected or hoped to find explosive materials in the course of their search for

firearms.  *See Horton v. California*, 496 U.S. 128, 138-40 (1990) (if an officer "has a valid warrant

to search for one item and merely a suspicion concerning the second, whether or not it amounts to

probable cause, we fail to see why that suspicion should immunize the second item from seizure if

it is found during a lawful search for the first."); *United States v. Ewain*, 88 F.3d 689, 694-95 (9th

Cir. 1996).  In sum, defendant has shown no grounds for suppression of the evidence found inside

defendant's residence.

C. *Staleness*.  The court rejects defendant's contention that the information upon which the

warrant was based was "stale" and no longer supported probable cause.  As defendant notes, the

question of whether information is stale depends upon the nature of the crime as well as the passage

of time.  *See United States v. Meyers*, 106 F.3d 936, 939 (10th Cir. 1997).  In this instance, the nature

of the alleged offense --a shooting of firearms on the defendant's rural farmstead -- makes it likely

that the firearm used in the offense was still at the farmstead approximately one month after the incident.

D. *Search Exceeding the Scope of the Warrant*.  Defendant argues that the search exceeded the scope of the warrant, pointing in particular to the agents' seizure of a drawing allegedly containing instructions pertaining to an explosive device.  As indicated previously, the court concludes that the seizure of this item was lawful under the plain view doctrine.

The evidence at the suppression hearing did show that an agent improperly searched the defendant's computer without any lawful basis for doing so, but the Government does not seek to introduce any evidence obtained from the computer.  Moreover, this error on the part of an inexperienced agent does not show that the officers "grossly exceeded the scope of the warrant." *Cf. United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988) (blanket exclusion of evidence was appropriate where officers seized over 600 items of property in flagrant disregard of warrant's terms).  The court thus finds no basis for suppression of the evidence.

F. *Good Faith Exception*.  In view of the foregoing findings, the court need not address application of the "good faith" exception to the warrant requirement.

IV.  *Conclusion*.

The defendant's Motion to Suppress (Doc. 30) is hereby DENIED.  IT IS SO ORDERED this __29th__ Day of November, 2006, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

11